UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:                                          Chapter 7

Stylianos Antoniou,                             Case No. 12-45622 (CEC)
                        Debtor.

Jacob Agai, 291 Avenue P, LLC, and Summerfield
Developers, Inc.,
                                                Adv. Pro. No. 12-01299-CEC
                        Plaintiffs
            v.

Stylianos Antoniou,

                        Defendant.

DECISION

APPEARANCES:

Michael P. Bowen                          Karl J. Silverberg
Kasowitz Benson Torres & Friedman LLP     Silverberg P.C.
1633 Broadway                             320 Carleton Ave., Suite 6400
New York, New York 10019                  Central Islip, New York 11722
*Counsel for Plaintiffs*                  *Counsel for Defendant*

CARLA E. CRAIG
Chief United States Bankruptcy Judge

## DECISION

This matter comes before the court on the motion of Jacob Agai, 291 Avenue P, LLC, and Summerfield Developers, Inc. (the "Plaintiffs"), seeking summary judgment pursuant to Federal Rule of Civil Procedure 56(a), made applicable here by Federal Rule of Bankruptcy Procedure 7056, against Stylianos Antoniou (the "Debtor"), seeking denial of discharge under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), and 727(a)(5).

The uncontested facts show that the Debtor transferred and concealed property with intent to hinder, delay, or defraud creditors within one year of the filing by deliberately diverting his paychecks and other income to his wife's bank account in order to prevent his creditors from garnishing these funds; that he concealed or failed to keep or preserve recorded information from which his financial condition might be ascertained; and that he knowingly and fraudulently made a false oath by failing to disclose the existence of the bank account containing his earnings, failing to disclose the transfers of these funds to his wife, and significantly misstating his income for 2010 and 2011 on his schedules and Statement of Financial Affairs filed in the case. Accordingly, for the reasons set forth below, Plaintiffs' motion for summary judgment is granted.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(J). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The facts set forth below are not in dispute, except as otherwise noted.

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on July 31, 2012 (the "Filing Date"). (Petition, 12-45622-CEC, ECF No.1). On October 24, 2012, Plaintiffs filed an adversary proceeding objecting to the Debtor's discharge pursuant to 11 U.S.C. § 727(c). (Compl., 12-01299-CEC, ECF No. 1.) On December 16, 2013, Plaintiffs filed a motion for summary judgment (the "Motion"). (Plaintiff's Mot. for Leave to Amend the Compl. and Summ. J., 12-01299-CEC, ECF No. 14.)

Debtor owned one third of a construction company called Diontech Consulting, Inc. ("Diontech") from approximately 2000 to the beginning of 2008. (Schedule B, 12-45622-CEC, ECF No. 1; Decl. of Michael Paul Bowen, Ex. 8, pp. 5:11-9:10, pp. 21:16-22:13, 12-01299-CEC, ECF No. 16-12.) According to Plaintiffs, in 2007, Diontech breached two construction contracts. (Compl. ¶ 1, 12-01299-CEC, ECF No. 1.) After a trial in the Supreme Court of the State of New York, County of Richmond, Justice Kim Dollard issued a decision awarding a judgment of approximately $4.8 million, in favor of Plaintiffs, against Diontech, on September 19, 2011. (Decl. of Michael Paul Bowen, Ex. 6, 12-01299-CEC, ECF No. 16-10.) Plaintiffs subsequently commenced a post-judgment proceeding pursuant to Article 52 of the New York Civil Practice Law and Rules (N.Y. C.P.L.R.) to, *inter alia*, pierce the corporate veil of Diontech and hold the Debtor personally liable, jointly and severally, with Diontech and the other Diontech principals. (Plaintiffs' Mot. for Leave to Amend the Compl. and Summ. J., 12-01299-CEC, ECF No. 14 at 6-7.)

On January 9, 2013, Plaintiffs filed a motion for relief from the automatic stay seeking to pursue this state court litigation against the Debtor.  (Mot. for Relief from Stay, 12-45622-CEC, ECF No. 11.)  That motion was granted on February 13, 2013.  (Order Granting Mot. For Relief From Stay, 12-45622-CEC, ECF No. 16.)  On August 19, 2013, Justice Dollard entered a decision and order piercing the corporate veil and holding the Debtor jointly and severally liable for the $5.8 million judgment against Diontech.  (Decl. of Michael Paul Bowen, Ex. 7, 12-01299-CEC, ECF No. 16-11.)

In his petition, the Debtor did not list any interests in bank accounts on his schedule of personal property.  (Schedule B, 12-45622-CEC, ECF No. 1.)  However, the Debtor's wife maintained a bank account at TD Bank (the "Bank Account").  (Supp. Aff. in Opp'n of Suzanne Antoniou , 12-01299-CEC, ECF No. 31 at ¶ 2; Decl. of Michael Paul Bowen, Ex. 8, pp. 58:11-59:9, 12-01299-CEC, ECF No. 16-12.)  From 2010 to until the end of 2011, the Debtor worked for Centex Builders Inc. ("Centex"), a construction company, and received regular paychecks.[1] (Supp. Aff. in Opp'n of Stylianos Antoniou ¶ 13, 12-01299-CEC, ECF No. 30 at ¶¶ 13-15.) According to the Debtor's affidavit, he directed Centex to make his payroll checks payable to his wife in order to avoid garnishment of his income by creditors.  Id. at ¶ 13.  These checks were then deposited into the Bank Account.  (See Supp. Aff. in Opp'n of Stylianos Antoniou, Ex. H, 12-01299, ECF No. 30-8; Decl. of Michael Paul Bowen, Ex. 33, 12-01299-CEC, ECF No. 16-43.)  From March 2010 to November 2011, over $60,000 of the Debtor's paychecks were deposited into the Bank Account.  (Decl. of Michael Paul Bowen, Ex. 33, 12-01299-CEC, ECF

---

[1] Centex also employed Dennis Mihalatos, the former president of Diontech, and was owned by Kyriacos Skevas, an accountant who worked for Mr. Mihalatos and Diontech.  (Decl. of Michael Paul Bowen, Ex. 4, 9:10 – 11:4, 12-01299-CEC, ECF No. 16-8; Supp. Aff. of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 13.)

No. 16-43.)  The Debtor states that, in diverting his pay to his wife's bank account, he "did not intend to defraud a creditor; [he] wanted to avoid the frustration of the process."  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 14.)

The Debtor left Centex in November 2011 and began working for his current employer, Zeus Construction, in December of 2011.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299, ECF No. 30 at ¶¶ 15-16.)  The Debtor states that during the time he was employed by Zeus Construction, he followed a practice of cashing his paychecks and depositing the cash into the Bank Account.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 17.)  The Debtor's wife submitted an affidavit stating that she was unemployed since 2002, except for a period in 2004.  (Supp. Aff. in Opp'n of Suzanne Antoniou, 12-01299-CEC, ECF No. 31 at ¶ 3.)  During the period between December, 2011 and the Filing Date, almost $70,000 was deposited into the Bank Account.  (See Supp. Aff. in Opp'n of Stylianos Antoniou, Ex. H, 12-01299-CEC, ECF No. 30.)  Based on the Debtor's and his wife's admissions, it is clear that most or all these funds are proceeds of the Debtor's paychecks from Zeus Construction, or rental income from property owned by the Debtor, either individually or jointly.  (Hr'g Tr. 18:14-16 & 19:19-21, May 8, 2014, 12-01299, ECF No. 45; Schedule I, 12-45622-CEC, ECF No. 1.)

The Debtor states that the Bank Account was the only bank account for his family and that the money in this account was used for his household's living expenses.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 13)  He also states that, "Prior to filing bankruptcy I tried to pay my debts."  Id. at ¶ 19.  These payments were principally of credit card debt for which he and his wife were both liable.  (Hr'g Tr. 15:11-16:15, May 8, 2014, 12-

01299, ECF No. 45.)  As the Debtor has identified no other source of income, it appears these payments also were made from funds in the Bank Account.

The Debtor's Statement of Financial Affairs required the Debtor to disclose payments within one year before the filing date to or for the benefit of creditors who were insiders (question 3(c)); gifts made within one year before the filing date (other than ordinary and usual gifts to family members aggregating less than $200 in value per individual family member) (question 7); and all other property transferred within two years prior to the filing date, other than property transferred in the ordinary course of the business or financial affairs of the debtor (question 10 ).  The Debtor failed to disclose the transfers of his earnings to the Bank Account in response to any of these questions.  (Statement of Financial Affairs, 12-45622-CEC, ECF No. 1.)

In 2010 and 2011, when the Debtor directed that his paychecks be made payable to his wife, he received W-2 statements in his wife's name.  The 2010 W-2 statement shows the Debtor's wife earning gross wages of $86,400.  (Supp. Aff. in Opp'n of Stylianos Antoniou, Ex. C, 12-01299-CEC, ECF No. 30-3.)  This is notwithstanding the Debtor's and his wife's admissions that she did not earn an income during this time period.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 13; Supp. Aff. in Opp'n of Suzanne Antoniou, 12-01299, ECF No. 31 at ¶ 3.)  The joint income tax return filed by the Debtor and his wife for 2011 shows gross income of $104,400.  (Supp. Aff. in Opp'n of Stylianos Antoniou, Ex. D, 12-01299-CEC, ECF No. 30-4.)  The W-2 statements attached to the 2011 tax return falsely show the Debtor's wife earning over $78,000 in income.  Id.

On the Debtor's Schedule I, he stated that he was the only member of his household earning an income.  (Schedule I, 12-45622-CEC, ECF No. 1.)  On his Statement of Financial

Affairs, the Debtor disclosed income for the years 2010 and 2011 of $40,000 and $35,000, respectively.  (Statement of Financial Affairs, 12-45622-CEC, ECF No. 1.)  This is less than half the income actually earned by the Debtor during these years, as shown on the Debtor's income tax return for 2011 and W-2 statements for 2010 and 2011(which, though in his wife's name, actually reflect income earned by the Debtor).  (Supp. Aff. in Opp'n of Stylianos Antoniou, Exs. C & D, 12-01299-CEC, ECF Nos. 30-3 & 30-4.)

    In response to these discrepancies and omissions, the Debtor stated that he "skimmed" the schedules and statement of financial affairs and that he "relied on [his] lawyer to fill in the correct information."  (Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 22 at ¶ 42; Second Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 43 at ¶ 3.)

## <u>STANDARD FOR SUMMARY JUDGMENT</u>

    Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  When deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue of material fact to be tried.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  A fact is considered material if it "might affect the outcome of the suit under the governing law."  <u>Id.</u> at 248.  No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  <u>Id.</u> at 249–50 (citations omitted).  On the other hand, if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the

nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir.1994). "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." Rosenman & Colin LLP v. Jarrell (In re Jarrell), 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (citations omitted).

Here, the material facts are not in dispute.

## DISCUSSION

Plaintiffs seek denial of Debtor's discharge under 11 U.S.C. §§ 727(a)(2)(A) (concealment of property), 727 (a)(3) (failure to maintain books and records), 727 (a)(4)(A) (false oath), and 727 (a)(5) (failure to explain loss of assets or deficiency of assets to meet liabilities).[2] Denial of discharge is an extreme penalty and therefore § 727 must be construed strictly against the objector and liberally in favor of the debtor. State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1310 (2d Cir. 1996). Courts must exercise even greater caution when considering denial of discharge sought by motion for summary judgment. State Bank of India v. Sethi (In re Sethi), 250 B.R. 839 (Bankr. E.D.N.Y. 2000). However, discharge in bankruptcy is a privilege, not a right, and is reserved only for the honest but unfortunate debtor. Christy v. Kowalski (In re Kowalski), 316 B.R. 596, 600-01 (Bankr. E.D.N.Y. 2004).

Applying this strict standard, the undisputed facts in this case show that denial of discharge is warranted. The Debtor deliberately transferred his income to, and concealed the existence of, the Bank Account, which contained money he earned from his employment and rental income from property he owned, either individually or jointly. The Debtor's incomplete

---

[2] All statutory citation are to Title 11, United States Code, unless otherwise indicated.

financial records, consisting of partial bank statements, tax returns, and W-2 statements, are

insufficient to ascertain the Debtor's financial condition. (<u>See</u> Exhibits to Supp. Aff. in Opp'n of

Stylianos Antoniou, 12-01299-CEC, ECF No. 30.)  The Debtor also failed to list his interest in

the Bank Account on his schedules, which are filed under oath.  In addition, he failed to disclose

the transfers of his earnings to his wife, and drastically understated his income on his Statement

of Financial Affairs.  The Debtor did not disclose any of this information until over twenty

months after the Filing Date, and he only disclosed it in response to this adversary proceeding.

Moreover, the Debtor still has not filed amended schedules or an amended Statement of

Financial Affairs.  As a result, summary judgment is warranted under §§ 727(a)(2)(A), 727(a)(3),

and 727(a)(4)(A).

## I.      Section 727(a)(2)(A)

Denial of discharge is required when "the debtor, with intent to hinder, delay, or defraud

a creditor… has transferred, removed, destroyed,  mutilated, or concealed… property of the

debtor, within one year before the date of the filing of the petition."  11 U.S.C. § 727(a)(2).

Property of the debtor is broadly defined and includes all tangible and intangible assets under

state law.  <u>Lisa Ng v. Adler (In re Adler)</u>, 494 B.R. 43, 62 (Bankr. E.D.N.Y. 2013).  Transfer

means "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of

disposing of or parting with property or an interest in property."  11 U.S.C. § 101(54).  To

conceal property means (1) to transfer the property to another party while retaining some

beneficial interest or, (2) where no transfer occurs, to "withhold[] knowledge of an asset by the

failure or refusal to divulge information required by law to be made known."  <u>Adler</u>, 494 B.R. at

63 (internal quotations omitted).  "Courts will find the requisite intent 'to hinder, delay, or

defraud' a creditor from either: (1) direct or explicit proof, a rarity, or (2) a preponderance of circumstantial evidence of a Debtor's illicit intent, the so-called 'badges of fraud.'" Id. at 65.

   A. Property of the Debtor

   Property is not defined in the Bankruptcy Code; rather, the Code looks to state law to determine what constitutes an interest in property. Kaufman v. Chalk & Vermilion Fine Arts, LLC, 31 F. Appx. 206, 208 (2d Cir. 2002) (holding that state law defines interests in property). "Among other things, an asset is any form of personal property with value, including money and written instruments that 'create[ ],' 'acknowledge[ ],' or 'evidence[ ]' a financial obligation, not exempt from liability by statute or common law." Adler, 494 B.R. at 62 (citing N.Y. GEN. CONSTR. LAW §§ 38–39 and N.Y. DEBT. & CRED. LAW § 270). This broad definition encompasses all forms of property and includes wages earned before the commencement of the case. Adler, 494 at 62-63.

   B. Transferred or concealed

   Prior to the Filing Date, the Debtor, by his own admission, "asked [his] employer [Centex] to make [his] checks payable to [his] wife" and deposited them into the Bank Account. (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 13; Decl. of Michael Paul Bowen, Ex. 33, 12-01299-CEC, ECF No. 16-43.) The Debtor also stated that that during the time he has worked for his current employer, Zeus Construction, he has cashed his paychecks and then deposited the cash into the Bank Account. (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 17.) The Debtor is not, and during this time was not, a co-owner of the Bank Account. Indeed, the Debtor removed his name from the Bank Account in April 2010, after creditors obtained judgments against him. Id. at ¶ ¶ 11-12. He also stated

that this account was the only account for his family and that the money in it was used for his family's living expenses and to pay his debts.  Id. at ¶¶ 11-19.  Thus, the Debtor transferred property to his wife while retaining a beneficial interest in the property.  This satisfies the legal standard for transferring or concealing property of the debtor under 11 U.S.C. § 727(a)(2)(A).  Adler, 494 B.R. 63-64.

To result in a denial of discharge under § 727(a)(2)(A), the transfer or concealment must have occurred within one year of the Filing Date.  The Debtor filed his chapter 7 petition on July 31, 2012.  He stated that he began diverting his paychecks to the Bank Account in early 2010, and that this practice continued until January 2011.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 13.)  He further stated that he resumed the practice after February 2011, and the record shows that he continued it until he left Centex in November 2011.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 14; Decl. of Michael Paul Bowen, Ex. 33, 12-01299-CEC, ECF No. 16-43.)  When the Debtor began his job with Zeus Construction in December 2011, he cashed his paychecks and deposited the cash into the Bank Account.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 17.)

While some of this activity took place outside the one-year window, courts have applied the "continuous concealment" doctrine to § 727(a)(2)(A).  Painewebber Inc. v. Gollomp (In re Gollomp), 198 B.R. 433, 440 (S.D.N.Y. 1996).  The Third Circuit held that "a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year." Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993).  Under this

doctrine, even if the Debtor's initial transfers to the Bank Account occurred outside the statutory period, his continuing concealment of the Bank Account and the transfers to his wife, which extended throughout the one year period before the Filing Date, warrants a finding that the Debtor concealed property during the statutory period.

However, even without applying the continuing concealment doctrine, the undisputed facts still show transfers and acts of concealment within the one-year period before the Filing Date. Every time the Debtor deposited his paycheck, or the proceeds of his paycheck, into the Bank Account, he was transferring property and concealing that property from his creditors.

C. Intent to hinder, delay, or defraud creditors

"The final element—a debtor's actual, rather than constructive, intent—focuses on a debtor's wrongful conduct towards a creditor, regardless of actual effect on one, some, or all." Adler, 494 B.R. at 65. As actual intent is rarely susceptible to direct proof, courts often turn to the "badges of fraud" for circumstantial evidence of intent. Badges of fraud include

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

In re Kaiser, 722 F.2d 1574, 1582-83 (2d Cir. 1983). In particular, "[t]he transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property, is a classic badge of fraud." Id. at 1583. The presence of several badges of fraud is sufficient grounds for a bankruptcy court to conclude that the Debtor acted with intent to hinder, delay, or defraud creditors. Id. (finding fraudulent intent based upon the presence of two badges of fraud).

Here, the undisputed evidence shows that multiple badges of fraud are present in this case: (1) nothing on the record indicates that the Debtor received any consideration for transferring his paychecks; (2) the transferee was the Debtor's wife; (3) the Debtor retained the benefit of the transferred property as it was used to pay for his and his family's living expenses and to pay his debts; and (4) the pattern of the transfers demonstrates that the Debtor diverted his paychecks to his wife's account to avoid creditor garnishment.  This evidence is more than sufficient to conclude that the Debtor concealed his property with fraudulent intent.  See Kaiser, 722 F.2d at 1583.

Further, the Debtor expressly admitted that he diverted his paychecks to his wife to prevent his creditors from restraining his bank account.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶¶ 13-14.)  Moreover, he concealed this diversion of assets by filing a W-2 statement with his tax returns, which falsely stated that his wife earned this income.  Id., Ex. C and D.   This is direct proof of the Debtor's intent to conceal or transfer these assets to "hinder, delay, or defraud a creditor."  11 U.S.C. § 727(a)(2).

The Debtor's attempt to justify his transfers and concealment fails. He explains that, in prior years, judgment creditors seized all the funds in his bank account, including exempt wages.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 13.)  In response to the seizures, the Debtor diverted funds to his wife "to protect the income needed for basic living expenses."  Id.  This explanation neither justifies his conduct nor negates the strong inference of intent to hinder, delay, or defraud that arises from the Debtor's deliberate placement of his funds outside his creditors' reach.  New York law provides protections for judgment debtors who are subject to income execution.  N.Y. C.P.L.R. § 5231.  The Debtor might have availed himself of

these protections, but instead he placed all of his income in his wife's account, even non-exempt income. Moreover, at the hearing on the Motion, Debtor's counsel stated that the funds in the Bank Account included non-exempt rental income, in addition to the non-exempt portion of his wages. (Hr'g Tr. 5:25-6:2, 18:9-16, 21:15-21, May 8, 2014, 12-01299, ECF No. 45.)

Even after the Debtor learned that he could exempt ninety percent of his earnings from garnishment under New York State law, he continued diverting his paychecks to the Bank Account "to avoid the frustration of the process." (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 ¶ 14.) This is not a legitimate explanation or excuse.

Nor does the Debtor's argument that the amount in question is *de minimis* in relation to the amount of debt he owes justify his transfers and concealment. Under N.Y. C.P.L.R. § 5205(d)(2), ninety percent of a judgment Debtor's earnings for personal services rendered is exempt from garnishment to satisfy a money judgment. Assuming all the funds deposited into the Bank Account in the one year period before the Filing Date were subject to this exemption, the minimum amount available to creditors would have been approximately $12,000.[3] This is not a trivial amount of money, and even if it were, that would not save the Debtor.

Historically, there is no *de minimis* exception for fraudulent conduct by the debtor in bankruptcy.

> Courts will not measure the dishonesty of a bankrupt, once that be shown; a
> discharge is a privilege granted only to such as do not practice on their creditors

---

[3] In the one year period before the filing date, the total amount deposited into the Bank Account was $122,529.73. (Supp. Aff. in Opp'n of Stylianos Antoniou. Ex. H, 12-01299 ECF No. 30-8.) As the Debtor and his wife have both asserted that his wife does not work, and that the Debtor is solely responsible for supporting his family, the conclusion follows that all the deposits into the Bank Account were funds belonging to the Debtor. Further, the hearing on the Motion, the Debtor's counsel reiterated that the Bank Account was the only bank account the Debtor and his wife maintained and that some of the funds were rental income that would not have been exempt. (Hr'g Tr. 17:16-18:16, May 8, 2014, 12-01299, ECF No. 45.)

> in any way. The law forbids all efforts to put property beyond the reach of creditors, no matter what its value; so long as courts are tolerant of such purposes of the bankruptcy act will be balked.

In re Feynman, 77 F.2d 320, 322 (2d Cir. 1935).  See also Kaganowitz v. Manufacturers Trust Co., 145 F.2d 754, 756 (2d Cir. 1944) ("That the amounts here involved were small is no defense.")  The focus in this analysis is on the fraudulent conduct itself, not the value of the assets in question.

In  In re Arcuri, the court discussed the *de minimis* value of an asset in connection with an objection to discharge under § 727(a)(4)(A), which provides for denial of discharge for a debtor who "in connection with the case . . . made a false oath or account."  116 B.R. 873 (Bankr. S.D.N.Y. 1990).  The court observed that "[i]f the false oath pertains to an asset of *de minimis* value…this may tend to vitiate the Debtor's fraudulent intent."  Id. at 881. However, even if the amounts in question here were *de minimis*, whatever exception might exist applies only to the Debtor's failure to disclose it.  If the value of an asset is extremely small, the Debtor's failure to disclose it could be attributed to carelessness, rather than fraudulent intent.  See Gollomp, 198 B.R. at 438.  Here, the Debtor admittedly diverted funds to the Bank Account in order to place those assets beyond the reach of his creditors.  That is a deliberate act and is not the result of carelessness.

The presence of multiple badges of fraud and the Debtor's admissions that he transferred and concealed his property in order to place it out of reach of his creditors constitute ample evidence of the Debtor's intent to hinder, delay, or defraud his creditors.  As a result, summary judgment is warranted on this count.

## II.    Section 727(a)(3)

Section 727(a)(3) provides that the court may deny a debtor a discharge when "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information…from which the debtor's financial condition or business transactions may be ascertained, unless such act or failure to act was justified under all the circumstances of the case." 11 U.S.C. § 727(a)(3). The purpose of this section is "to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." D.A.N. Joint Venture v. Cacioli (In re Cacioli), 463 F.3d 229, 234 (2d Cir. 2006) (citation omitted).

The initial burden under § 727(a)(3) lies with the plaintiff, who must "show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." Cacioli, 463 F.3d at 235. Once the plaintiff has shown the absence or inadequacy of records, the burden shifts to the debtor to justify his failure to produce them. Id.

In assessing whether the debtor's failure to produce records is justified, the court will examine the particular circumstances of the case and ask "what a normal, reasonable person would do under similar circumstances." Cacioli, 463 F.2d at 235; Meridian Bank v. Alten, 958 F.2d 1226, 1231 (3d Cir. 1992). "[T]he debtor is not required to keep an impeccable system of bookkeeping or records so complete that he can satisfy an expert in business," but is required to produce sufficient records from which the court and the creditors can gain an accurate and complete picture of the debtor's finances. Sethi, 250 B.R. at 838.

Accepting the Debtor's self-description, he is an unsophisticated business person with limited formal education and computer skills. (Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC,

ECF. No. 22 at ¶¶ 4, 8.)  Prior to the commencement of this adversary proceeding, the Debtor

produced virtually no information regarding his personal finances.  After commencing this

adversary proceeding, Plaintiffs served the Debtor with a discovery demand on November 4,

2013, requesting, *inter alia*, "[a]ll financial documents related to defendant and/or his

spouse…including…all personal tax returns for defendant and all personal tax returns for

defendant's spouse" and "[a]ll bank records related to or involving in any way debtor [or] his

spouse."  (Decl. of Michael Paul Bowen, Ex. 9, 12-01299-CEC, ECF No. 16-14.)  The Debtor

failed to respond to this discovery demand.  (Decl. of Michael Paul Bowen, 12-01299-CEC, ECF

No. 16 at ¶ 12; Hr'g Tr. 18:21-19:10, Apr. 17, 2014, 12-01299, ECF No. 46.)   Only in response

to Plaintiffs' discovery of checks written by Centex to the Debtor's wife and the instant summary

judgment motion did the Debtor eventually come forward with tax returns for 2008, 2009, 2011,

2012, and 2013; [4] W-2 statements for 2008 through 2013; and banking records for 2008 through

2014.  (See Exhibits to Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF. No.

30.)

    However, these records are insufficient to ascertain the Debtor's true financial condition.

Tax returns and W-2 statements by themselves "are wholly insufficient for…a creditor to

ascertain the debtor's financial condition."  Sethi, 250 B.R. at 839.  These records do not show

the disposition of the Debtor's assets.  The bank statements that the Debtor produced are also

insufficient.  The Debtor provided the summary page of statements for the Bank Account for the

years 2010 to 2014.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF. No. 30 at

---

[4] The Debtor has not filed a personal income tax return for 2010.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF. No. 30 at ¶ 5.)

¶ 11.)  These records show only the amounts deposited and withdrawn, without providing any information about the source or use of the funds.  (<u>See</u> Supp. Aff. in Opp'n of Stylianos Antoniou, Ex. H, 12-01299-CEC, ECF. No. 30.)  It is impossible to get a complete picture of the Debtor's financial condition without this information.

The manner in which the Debtor chose to conduct his finances while working for Zeus Construction after November 2011 exacerbates the inadequacy of the records produced.  The Debtor stated that his practice was to cash his paychecks and then deposit the cash into the Bank Account.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF. No. 30 at ¶ 17.)  However, the Debtor has produced no records to verify this.  The records provided are insufficient to determine how much of each paycheck was deposited each month and when those deposits occurred.  Without complete information regarding these cash transactions, it is impossible to ascertain the Debtor's financial condition.

The Debtor offers no justification for his failure to produce additional records.  He does not give any reason why he only produced a single page of each of these bank statements.  Even if a careful examination of all the documents might yield clues as to where the Debtor's assets went, the Debtor "cannot simply place sacks of records before the bankruptcy judge or trustee and request the judge or trustee to sift through the documents and attempt to reconstruct the flow of the debtor's assets."  <u>Krohn v. Frommann</u>, 153 B.R. 113, 118 (Bankr. E.D.N.Y. 1993).

Plaintiffs in this case have met their burden to establish a *prima facie* case that the Debtor has failed to keep or preserve the necessary documents under § 727(a)(3).  In response, the Debtor has failed to produce the records or to offer sufficient justification for his failure to do so.  As a result, summary judgment is warranted on this count.

III.    **Section 727(a)(4)(A)**

Under § 727(a)(4)(A), the court may deny a debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case…made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To sustain this objection, the plaintiff must show by a preponderance of the evidence that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the statement related materially to the bankruptcy case; (4) the debtor knew the statement was false; and (5) the debtor made the statement with fraudulent intent." Adler 494 B.R. at 74 (internal quotations omitted). "A debtor's petitions and schedules can amount to statements under oath for purposes of § 727(a)(4)(A)." Id.; See also Beer Sheva Realty Corp. v. Pongvitayapanu (In re Pongvitayapanu), 487 B.R. 130, 140 (Bankr. E.D.N.Y. 2013) ("A false statement or omission in the debtor's petition, schedules, or statements, satisfies the requirement of a false oath."). "A statement is false if (1) it omits even one asset or source of income; (2) necessary[] material information is repeatedly left undisclosed during a case's pendency; or (3) an affirmative misstatement[] is made and is not corrected during an examination or at any point during his case's proceeding." Adler 494 B.R. at 75. A false oath is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984). A showing of harm to creditors is not essential to this determination, as the Second Circuit has "consistently held … that materiality does not require a showing that the creditors were prejudiced by the false statement." In re Robinson, 506 F.2d 1184, 1188 (2d Cir. 1974). "A statement is made with knowledge of its falsity if the debtor knew it to be false or if it was made with reckless disregard for its truth." Pongvitayapanu, 487 B.R. at 140.

The burden is on the plaintiff to prove each element by a preponderance of the evidence.  Id. at 139.  "However, when a plaintiff produces persuasive evidence of a false statement, the burden shifts to the debtor to come forward with evidence to prove that it was not an intentional misrepresentation or provide some other credible explanation."  Id. (internal quotations omitted).

A.  False Statements and Omissions

The Debtor failed to disclose significant assets and transfers and misstated his income. On his petition, schedules, and Statement of Financial Affairs, all submitted under oath, he failed to disclose the Bank Account, which primarily consisted of funds belonging to the Debtor, failed to disclose the transfers of his income to his wife, and misstated his income for both 2010 and 2011.

The Debtor indicated on his Schedule B that he did not have any interests in bank accounts.  (Schedule B, 12-45622-CEC, ECF No. 1.)  However, the Debtor admitted that the undisclosed Bank Account contained his earnings.  (Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶¶ 13, 17.)  The Debtor also stated that the funds in that account were used for his household living expenses and to pay his debts.  Id. at ¶¶ 13, 19.  The Debtor did have an interest in that account and yet failed to disclose it on his petition and schedules.

If it is assumed that the Debtor did not have an interest in the Bank Account, and that the Bank Account belonged exclusively to his wife, then the Debtor made a false oath by failing to disclose the transfers of his earnings to the Bank Account.  The Statement of Financial Affairs requires the Debtor to list all payments made to creditors who were insiders within one year of the Filing Date; to list all gifts made within one year before the Filing Date; and to list all other

property transferred within two years before the Filing Date.  The deposit of his Centex paychecks and of the proceeds of his Zeus Construction paychecks in the Bank Account would certainly fall into one or more of these categories; yet the Debtor responded "none" to all of these questions.  (Statement of Financial Affairs, questions 3(c), 7, 10, 12-45622, ECF No. 1.)

    The Debtor also stated on his Statement of Financial Affairs that his income for the years 2010 and 2011 was $40,000 and $35,000, respectively.  However, the W-2 statements for 2010 and 2011 and tax return for 2011 show gross wages of $86,400 for 2010 and income of $104,000 for 2011.  Although the W-2 forms state that the $86,400 shown on the 2010 W-2, and the $78,000 of the income for 2011, was earned by the Debtor's wife, both he and she have admitted that she earned no income during this period and that those amounts were the Debtor's earnings. (Supp. Aff. in Opp'n of Stylianos Antoniou, Ex. C and D, 12-01299-CEC, ECF Nos. 30-3 and 30-4; Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶ 13-14, 17; Supp. Aff. in Opp'n of Suzanne Antoniou, 12-01299-CEC, ECF No. 31 at ¶ 3.)  These earnings were required to be disclosed on the Debtor's Statement of Financial Affairs.

    Further, the Debtor did not provide any of this information until after the adversary proceeding objecting to his discharge was filed.  The Debtor filed this case on July 31, 2012.  He did not disclose any of his tax returns until April 12, 2014, and he did not disclose the existence of the Bank Account or the transfers to the Bank Account until April 25, 2014.  Moreover, the Debtor did not disclose the existence of the Bank Account voluntarily; it came to light only as a result of Plaintiffs' discovery taken of Centex.   (Hr'g Tr. 9:5-9:24, Apr. 17, 2014, 12-01299, ECF No. 46.)  This is precisely the type of conduct § 727(a)(4)(A) is designed to prevent.  Adler, 494 B.R. at 76

B.  Materiality of the Statements

The false statements in this case are material because they directly relate to the discovery of the Debtor's assets, his business dealings, and the disposition of his property.  The Debtor omitted his primary bank account.  It would be impossible for any creditor to get an accurate picture of the Debtor's assets without knowledge of this bank account.  Even if the non-disclosed property was exempt (as Debtor claims up to ninety percent of the funds in the account were), it is still material and must be disclosed.  Carlucci & Legum v. Murray (In re Murray), 249 B.R 223, 230 (E.D.N.Y. 2000).  The Debtor also failed to disclose the transfer of his paychecks to his wife while creditors were seeking to levy on his assets.  As the Second Circuit stated in Kaiser, such a transfer is a classic badge of fraud. Kaiser, 722 F.2d, at 1583.  The fact that the Debtor engaged in fraudulent transfers during the two years prior to the commencement of the case would be highly material to the Debtor's creditors.  Finally, the Debtor's failure to disclose his true income goes both to discovery of the Debtor's assets and to the disposition of his property.  The Debtor's false statements in his Schedules and Statement of Financial Affairs are clearly material.

C.  Fraudulent Intent

Fraudulent intent, for purposes of § 727(a)(4)(A), can be established by a showing of actual fraud, through evidence of the traditional badges of fraud, or by the debtor's reckless disregard for the truth of his statements.  Adler, 494 B.R. at 77.  Reckless disregard for the truth is analyzed by considering the following factors: "(a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's 'lack of financial sophistication' as evidenced by his or her professional background; and (c) whether a

debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies." Id. (internal quotations and citations omitted). Once the plaintiff has made a *prima facie* showing that the Debtor has made a materially false statement, the burden shifts to the debtor to "disprove either the relevant badges or accumulated indicia of his reckless indifference." Id. at 77-78.

### 1. *The Bank Account*

The Debtor has repeatedly claimed that he is not a financially sophisticated individual and that he does not have much formal education.  However, the Debtor knew that the money deposited in the Bank Account belonged to him, and that he was using the money in the account to pay for his household expenses and to pay his debts.  If the Debtor thought he had absolutely transferred the funds to his wife when he deposited them in the Bank Account, then the Debtor had a duty to disclose the transfers.  The Debtor should, at a minimum, either have disclosed the Bank Account as an asset on his schedules, or disclosed the transfers to his wife on his Statement of Financial Affairs.  He did neither, and he has provided no explanation justifying this failure to disclose.

### 2. *The Debtor's Income*

On his Statement of Financial Affairs, the Debtor significantly misstated his income for the two years prior to the Filing Date.  For 2011, he lists income of $35,000.  However, according to the 2011 joint tax return, the Debtor and his wife's gross income was $104,400, none of which, they admit, was earned by the Debtor's wife.  (Supp. Aff. in Opp'n of Stylianos Antoniou, Ex. D, 12-01299-CEC, ECF No. 30-4; Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶¶ 13-14, 17; Supp. Aff. in Opp'n of Suzanne Antoniou, 12-01299-

CEC, ECF No. 31 at ¶ 3.)  For 2010, the Debtor's Statement of Financial Affairs lists income of $40,000, yet the 2010 W-2 statement shows gross wages of $86,400.  Although this W-2 is in the Debtor's wife's name, he and his wife admit that these earnings were his.  (Supp. Aff. in Opp'n of Stylianos Antoniou, Ex. C, 12-01299-CEC, ECF No. 30-3; Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 30 at ¶¶ 13-14,17; Supp. Aff. in Opp'n of Suzanne Antoniou, 12-01299-CEC, ECF No. 31 at ¶ 3.)  The Debtor therefore underreported his income for 2011 by over 300% and for 2010 by over 200%.

To explain these false statements, the Debtor states that he "relied on [his] attorney when completing the schedules" and that he only "skimmed the final bankruptcy schedule" before filing his petition.  (Second Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 43 at ¶ 3.)  The Debtor admits that the amounts shown in his tax returns, not his Statement of Financial Affairs, are accurate:  "I cannot hide from my tax returns so there was no reason for me to intentionally state a false amount for my income."  (Second Supp. Aff. in Opp'n of Stylianos Antoniou, 12-01299-CEC, ECF No. 43 at ¶ 3.)  The magnitude of the discrepancy between the Debtor's income, as stated on in the W-2s, and as reported in his Statement of Financial Affairs, is such that the misstatements should have been apparent to the Debtor, even upon a cursory review of the petition.  Moreover, when signing the Statement of Financial Affairs, the Debtor declared, under penalty of perjury, that he had read the answers in the statement and that they were true and correct.  (Statement of Financial Affairs, p. 11, 12-45622-CEC, ECF No. 1.)  If he did not read the statement, that declaration is a material misstatement for purposes of § 727(a)(4)(A).  In re Dranichak, No. 10-63042, 2012 WL 2343700, at *7 (Bankr. N.D.N.Y.

June 20, 2012) aff'd sub nom. Dranichak v. Rosetti, 493 B.R. 370 (N.D.N.Y. 2013) (citing Bohm v. Dolata (In re Dolata), 306 B.R. 97, 149 (Bankr. W.D. Pa. 2004)).

3.  *Conclusion*

Plaintiffs have amply established a *prima facie* case that the Debtor made material misstatements with fraudulent intent.  In response, the Debtor has failed to explain these misstatements, or to provide a credible explanation.  The record is replete with evidence, at a minimum, of the Debtor's reckless disregard for the truth with regard to the omissions and misstatements concerning the Bank Account and the Debtor's income.  Further, the Debtor did not even attempt to provide truthful information concerning any of these matters until after an objection to his discharge was filed and still has not filed amended schedules or an amended Statement of Financial Affairs.  Summary judgment is therefore warranted on this count.

**IV.    Other Counts**

The Plaintiffs also allege that the Debtor should be denied a discharge because he failed to maintain records related to the various businesses in which he had an ownership interest, failed to disclose those interests, and failed to explain the loss of assets from those businesses. As there are already ample grounds for a denial of discharge, these claims are not addressed.

## <u>CONCLUSION</u>

For the foregoing reasons, summary judgment is warranted and the Debtor's discharge is denied pursuant to §§ 727(a)(2)(A), 727(a)(3), and 727(a)(4)(A).  A separate order will issue.



**Dated: Brooklyn, New York**
**August 14, 2014**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**